## Commonwealth v. Rudolph

*Marc A. Werlinsky,* for appellant.
*Marc I. Rickles,* for appellee.

CEPPARULO, *J.,* September 18, 2005—

## I. INTRODUCTION

The Pennsylvania Department of Transportation has appealed from this court's order of July 6, 2005, sustaining Timothy Rudolph's appeal of a one-year suspension based on a violation and conviction in the jurisdiction of New Jersey for driving while intoxicated (DWI). This opinion is filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

## II. PROCEDURAL BACKGROUND
## AND FINDINGS OF FACT

By letter bearing mail date March 10, 2004, the Commonwealth of Pennsylvania, Department of Transportation (PennDOT) notified Rudolph that his driving privilege was suspended for one year, effective April 4, 2004,

as a result of his conviction in New Jersey for DWI. Rudolph was arrested for DWI in New Jersey on August 6, 1988, and was convicted there on January 11, 2005. Rudolph appealed the suspension of his Pennsylvania driver's license and a hearing was held before this court on July 6, 2005. At that hearing PennDOT and Rudolph agreed that the Driver's License Compact of 1996 (the Compact) was not adopted until December 10, 1996. Using the date of arrest as the operative date for applicability of the Compact, this court issued an order sustaining Rudolph's appeal since the Compact, under which PennDOT was proposing to suspend Rudolph's license, was clearly not adopted as of the date of Rudolph's arrest (August 6, 1988). PennDOT now appeals from that order.

## III. ISSUES

PennDOT raises one issue on appeal: whether this court erred by sustaining Rudolph's appeal and "disregarding" *Schrankel v. PennDOT,* 562 Pa. 337, 755 A.2d 690 (2000) in determining the relevant date for assessing whether the Compact and Pennsylvania's subsequent license suspension are valid, concluding instead that the "date of arrest" rule of *Lepko v. PennDOT,* 873 A.2d 47 (Pa. Commw. 2005) and *Woods v. PennDOT,* 873 A.2d 55 (Pa. Commw. 2005) controls.[1]

---

1. On appeal, PennDOT asserts four issues; (1) that this court erred in sustaining Rudolph's appeal where PennDOT met its burden of proof and Rudolph failed to raise a "cognizable defense," (2) that this court erroneously disregarded *Schrankel, supra,* which PennDOT asserts stands for the proposition that the Compact "is properly applied where a Pennsylvania licensee is convicted after that Compact's enactment

## IV. ANALYSIS OF ISSUES

The Driver's License Compact of 1996, contained in 75 Pa.C.S. §1581 et seq., controls when a Pennsylvania driver is convicted of DUI in another state that has legally joined the Compact. Specifically, article IV of the Compact reads as follows:

"Effect of conviction

"(a) The licensing authority in the home state, for the purposes of suspension, revocation or limitation of the license to operate a motor vehicle, shall give the same effect to the *conduct* reported, pursuant to article III of this Compact, as it would if such conduct had occurred in the home state in the case of convictions for: . . .

"(2) driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug or under the influence of any other drug to a degree which renders the driver incapable of safely driving a motor vehicle. (emphasis supplied)"

New Jersey is a party state to the Compact. See N.J.S.A. §39:5D-1 et seq. Thus, a conviction for DWI in New Jersey is to be given "the same effect" as it would have if a DUI had occurred in Pennsylvania for purposes of license suspension.

---

of an offense that occurred before the Compact's effective date," (3) that this court erred in concluding that *Lepko, supra* and *Woods, supra* control. PennDOT asserts that those decisions are "inapplicable to the circumstances pertaining to Rudolph's suspension," (4) finally, PennDOT requests the opportunity to argue "any other issue" that may be raised by this court. See statement of matters complained of on appeal, paras. 1-4. These issues are consolidated above for convenience.

Pennsylvania's DUI law was contained in 75 Pa.C.S. §3731 until February 2004. Effective February 1, 2004, 75 Pa.C.S. §3731 was repealed and replaced by 75 Pa.C.S. §3802. 75 Pa.C.S. §3804 addresses the way in which punishment under the new section 3802 is to be implemented. 75 Pa.C.S. §3804(e)(1)(ii) provides that "[t]he department shall suspend the operating privilege of an individual under paragraph (2) upon receiving a certified record of the individual's conviction of or an adjudication of delinquency for: . . . (ii) an offense which is substantially similar to an offense enumerated in section 3802 reported to the department under article III of the Compact in section 1581 (relating to Driver's License Compact)." 75 Pa.C.S. §3804(e)(2) provides that "[s]uspension under paragraph (1) shall be in accordance with the following: . . . (iii) There shall be no suspension for an ungraded misdemeanor under section 3802(a) where the person is subject to the penalties provided in subsection (a) and the person has no prior offense." 75 Pa.C.S. §3804(e)(2)(iv) says that:

"(iv) For suspensions imposed under paragraph (1)(ii), notwithstanding any provision of law or enforcement agreement to the contrary, all of the following apply:

"(A) Suspensions shall be in accordance with subchapter D of chapter 15 (relating to the Driver's License Compact).

"(B) In calculating the term of a suspension for an offense that is substantially similar to an offense enumerated in section 3802, the department shall presume that if the conduct reported had occurred in this Com-

monwealth then the person would have been convicted under section 3802(a)(2)."

Act 24 amended 75 Pa.C.S. §1586, which is the section of the Compact providing that out-of-state offenses for DUI are to be treated as substantially similar to the Pennsylvania offense of DUI. The amended section 1586 simply substitutes "3802" for "3731," as the number of the Pennsylvania statute that contains the DUI offense. The substitution was necessary because, as previously noted, Act 24 repealed 75 Pa.C.S. §3731 and replaced it with 75 Pa.C.S. §3802. Further, section 21(2) of Act 24 provides that "[t]he repeal of . . . 75 Pa.C.S. §3731 shall not affect offenses committed prior to February 1, 2004, or civil or administrative penalties imposed as a result of those offenses."

In determining whether the Compact applies, and thus whether Rudolph's New Jersey arrest and conviction should result in the suspension of his Pennsylvania driving privileges, it is necessary first to determine whether the date of his arrest or the date of his conviction should be utilized as the relevant date. Because he was arrested for conduct that occurred years before the adoption of the Compact, and convicted after the DUI law was changed to reflect the adoption of the Compact, the distinction is crucial. PennDOT argues that *Lepko, supra,* and *Woods, supra,* deal with different issues than those in the present case, and that the date of conviction is the relevant date for determining whether the Compact applies.[2] However, *Lepko* and *Woods* clearly held that the

---

2. This court authored the trial court opinions in both *Lepko* and *Woods.* Each case dealt with the same issue of first impression, which

date of the DWI in the foreign state determines the applicability of the Compact's suspension provision. Because the suspension of Rudolph's Pennsylvania driving privilege is based on an out-of-state offense and conviction, the suspension would be dictated by the Compact if the Compact was in effect on August 6, 1988, the date of the offense. However, by agreement, both parties acknowledge that the Compact's enactment was on December 10, 1996, and there was, therefore, no Compact in effect when Rudolph was arrested. Both *Lepko* and *Woods* dictate that the date of conduct is the determinative date for application of the Compact and Rudolph is not, therefore, subject to suspension. A brief review of the facts in *Lepko* and *Woods* may help to explicate the reasoning used in the case sub judice.

In *Lepko,* the appellant was arrested and convicted for DWI in New Jersey. His arrest took place on September 17, 2003, and he was subsequently convicted on December 4, 2003. In a letter dated February 3, 2004, Lepko was notified of the suspension of his driving privileges in Pennsylvania. Lepko appealed the suspension arguing that the date of PennDOT's letter was the operative date and this court issued an order denying his appeal. Lepko in turn appealed the order, arguing that this court improperly applied 75 Pa.C.S. §1581 by refusing to apply the new DUI statute which would not have required a license suspension as it was a first offense. In an opinion that was affirmed and adopted by the Commonwealth

---

was the operative date in the foreign state for applicability of the Compact. PennDOT argued, in each case, that it was not the date of the conviction but was, instead, the date of the offending conduct in New Jersey.

Court of Pennsylvania, this court reasoned that allowing the date of a suspension letter or the date of conviction to determine which version of the DUI law to apply would not only be unsupported by the law, but would also produce disparate and unjust results for similarly situated drivers. Using the date of the offense is the only means of ensuring consistent application of license suspensions to out-of-state DUI convictions.

*Woods* presented a similar situation and this court applied the *Lepko* standard, maintaining that the date of Woods' conduct determined the legality of his license suspension. In *Woods,* the appellant was notified by mail of the suspension of his Pennsylvania driving privileges after he was convicted of DWI in New Jersey. A first-time offender, Woods was arrested in New Jersey on December 20, 2003, and convicted there on March 25, 2004. The suspension was based on an out-of-state offense and conviction, and therefore governed by the Compact, which dictated the suspension of his Pennsylvania driving privileges. Woods appealed the suspension, arguing that because his license suspension was not initiated by PennDOT until after the effective date of the new DUI law, his case was governed by the new law and carried no license suspension. This court found, as in *Lepko,* that the date of the offense determined the applicability of the Compact. Because Woods' conduct occurred before the law was changed, it is governed by the old law, resulting in a license suspension.

Applying the same date-of-offense rule established in *Lepko* to the case sub judice, Pennsylvania cannot suspend Rudolph's driver's license based on his DWI arrest on August 6, 1988. Because the Compact did not exist at

the time of the offense, PennDOT was not entitled to suspend his license based on the New Jersey DWI conviction, which occurred 16 years later. Allowing the conviction date to determine the applicability of the Compact invites chaos and potential manipulation of the system. Conviction dates are often within the driver's control and are, at the least, prone to manipulation. Continuing a case once or twice might result in the application of a new, more favorable law. Consider for instance, if the Compact was in full force and effect in 1988 and was later repealed in 2005. Would PennDOT really contend under that set of facts that Mr Rudolph would not be subject to penalty? As we opined in *Lepko* and *Woods,* a lawyer representing a first-time DWI defendant in New Jersey shortly before February 2004, would, under the rule of law being propounded herein by PennDOT, potentially be guilty of malpractice if that lawyer did not take every available opportunity to continue the case beyond the start date for the newly enacted Compact provision. The immutability of the incident date results in a fairer, clearer, more predictable application of the Compact and its effect on Pennsylvania drivers.

PennDOT cites *Schrankel, supra* for the proposition that the Compact is triggered at the date of conviction, which in this case occurred after the Compact's enactment. However, in *Schrankel,* the Supreme Court of Pennsylvania said:

"In reviewing the Compact as a whole, it is clear that it requires that the out-of-state authorities report *convictions* to the licensing state pursuant to article III, and that article IV dictates what effect such conviction will have in the home state. Indeed, the Compact captions article III, 'Re-

port of Conviction' and article IV, 'Effect of Conviction.' Further, the Compact at article III quite succinctly states that authorities 'shall report each conviction' to the home state. It is only after the report of conviction is received in the home state that the authorities, pursuant to article IV, look to the conduct involved to assess what effect that such conduct shall have in the home state." *Id.*, 562 Pa. at 340, 755 A.2d at 691. (emphasis supplied)

Because the proposed suspension of Rudolph's Pennsylvania driving privilege was based on an out-of-state offense and conviction, the suspension is governed by the Compact. Article IV of the Compact clearly mandates that Pennsylvania give the same effect to out-of-state conduct as it would if the conduct had occurred in Pennsylvania. See *PennDOT v. McCann,* 78 Bucks Cty. L.Rep., 274 (April 14, 2005). The relevant conduct in Rudolph's case was driving under the influence in New Jersey on August 6, 1988. If the Compact were enacted on that date, we would be obligated, for purposes of suspending Rudolph's driver's license, to treat the situation as though Rudolph had been arrested for driving under the influence in Pennsylvania on August 6, 1988, and subsequently convicted of DUI in Pennsylvania on January 11, 2005. Had Rudolph been arrested and convicted in Pennsylvania, section 21 of Act 24 would preserve PennDOT's ability to suspend his driver's license under the old law, 75 Pa.C.S. §3731.

As is obvious from the above discussion, the only way Pennsylvania may suspend a Pennsylvania driver's license for conduct that occurs out-of-state is by application of the Compact. Without a Compact in place, not only would Pennsylvania never be officially notified of

conduct occurring out-of-state, but even if it were notified, its power to take official action would be non-existent absent the power to suspend granted in the Compact for conduct occurring out-of-state. Using the date of the DWI offense as the applicable date, PennDOT obviously had no authority on August 6, 1988, to suspend a Pennsylvania driver's license issued to a Pennsylvania resident when that resident engaged in out-of-state conduct which was similar to conduct which in Pennsylvania would have resulted in a suspension. While that Pennsylvania driver would, upon conviction, lose driving privileges in the state where the offensive conduct occurred, that was the only penalty legally permissible until passage of the Compact. Since there is no dispute that the Compact became effective on December 10, 1996, there should also be no dispute with a holding that PennDOT had no authority to suspend a Pennsylvania driver's license for conduct occurring out-of-state on August 6, 1988.

As we reasoned in *McCann, supra,* using the date of the DUI offense as the applicable date is the only means of ensuring consistent application of license supervision to out-of-state DUI convictions, and because the statutory language in Pennsylvania supports using the date of conduct as the applicable date, Rudolph is subject to Pennsylvania law as it stood on August 6, 1988. The law in effect at that time, or the absence of it, mandates that PennDOT is without authority to suspend Rudolph's Pennsylvania driver's license today.

## V. CONCLUSION OF LAW

The foregoing represents the reasons for this court's order of July 6, 2005.